UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA (PHILADELPHIA)


THE UNITED STATES OF AMERICA )
                             )
              Plaintiff,     )    Case No. 25-CR-00057-2
                             )    United States Courthouse
         vs.                 )    Philadelphia, PA
                             )    June 26, 2025
MD MUNSUR ALI,               )    10:00 a.m.
              Defendant.     )
_____)


TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE HARVEY BARTLE, III,
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:              MARK B. DUBNOFF
UNITED STATES OF AMERICA        U.S. Attorney's Office
                                615 Chestnut Street
                                 Suite 1250
                                PHILADELPHIA, PA 19106


FOR THE DEFENDANT:              SPENCER M. WERTHEIMER
MD MUNSUR ALI                   Wertheimer Law LLC
                                1800 John F Kennedy Blvd.
                                 Suite 400
                                PHILADELPHIA, PA 19103


                                TIMOTHY J. TARPEY
                                Parkinson, Tarpey & Lloyd
                                The Philadelphia Building
                                1315 Walnut Street
                                 Suite 1605
                                PHILADELPHIA, PA 19107


Electronic Sound Recorder:      NICOLE D. SPICER

Transcript produced by:
    DATAGAIN Inc.,
    10750 Moore Drive, Parkland, Florida 33076
    and 1 Creekside Court, Secaucus, New Jersey 07094

Proceedings recorded by electronic sound recording.

```
 1                            INDEX

 2

 3    SWORN TESTIMONY          Direct   Cross  Redirect   Recross

 4    Government Fact Witnesses

 5    Tom Kramer                 5       11       -          -

 6

 7

 8    EXHIBITS                      Introduced         Admitted

 9    None.                             -                 -

10

11    ORAL ARGUMENTS                               Commenced

12     Mr. Dubnoff                                     19

13     Mr. Wertheimer                                  24

14     Mr. Dubnoff                                     30

15     Mr. Wertheimer                                  32

16     Mr. Dubnoff                                     33

17

18    STATEMENT FROM DEFENDANT

19     Mr. Ali                                         35

20

21

22    FINDINGS AND SENTENCE

23    The Court                                        35

24
```

```
 1                    (Proceedings Started at 10:00 a.m.)

 2             (Call to Order of the Court)

 3                    THE COURT: Good morning.

 4                    MULTIPLE SIMULTANEOUS SPEAKERS: Good morning, Your

 5     Honor.

 6                    THE COURT: I understand we have an interpreter in

 7     the - is that correct, Ms. -?

 8                    THE CLERK: No. No, (INDISCERNIBLE 10:00:33).

 9                    THE COURT: No, no interpreter. All right.

10                    The Court has before it this morning the Sentencing

11     Hearing in the case of the United States of America versus

12     Mohammed Munsur Ali, Criminal Action 25-57-2.

13                    I'll first hear from the Government, then from the

14     Defense Counsel, and then from the Defendant.

15                    Mr. Dubnoff?

16                    MR. DUBNOFF: Good morning, Your Honor.

17                    THE COURT: Good morning.

18                    MR. DUBNOFF: Your Honor, seated with me at Counsel

19     table are FBI Agents Jason Huff (PHONETIC) and Chad Spiker

20     (PHONETIC). They were the Case Agents who investigated this

21     case.

22                    Also, in the courtroom today, there's Mayor Tayub.

23                    I'd the Mayor to stand up and be acknowledged.

24                    UNIDENTIFIED SPEAKER: (INDISCERNIBLE 10:01:10)

25                    THE COURT: Thank you.
```

```
 1              MR. DUBNOFF: As well as former Mayor, Tom Kramer.

 2              Now, Your Honor heard from Mr. Kramer at a prior

 3   hearing with regard to Mr. Hasan's sentencing.

 4              THE COURT: That's correct.

 5              MR. DUBNOFF: Mr. Ali has not had an opportu- -

 6   through his Counsel, has not had an opportunity to cross-

 7   examine Mr. Kramer. I would like to present Mr. Kramer's

 8   testimony in brief and then turn him over to Defense Counsel.

 9   But the - the gist of the testimony will be the same, -

10              THE COURT: Thank you.

11              MR. DUBNOFF: - or that's what I expect it to be.

12              THE COURT: You may do so.

13              MR. DUBNOFF: Mr. Kramer?

14              MR. KRAMER: Yes.

15              (BACKGROUND NOISE)

16              (The Witness is Sworn)

17              THE CLERK: Would you kindly state and spell your

18   name for the record?

19              MR. KRAMER: Thomas Kramer, K-R-A-M-E-R.

20              THE CLERK: Thank you.

21              THE COURT: You may be seated.

22                  TOM KRAMER, GOVERNMENT WITNESS

23                       DIRECT EXAMINATION

24   BY MR. DUBNOFF:

25   Q    Good morning, Mr. Kramer. I'll stand over here so you
```

```
 1   can see me clearly.
 2            MR. DUBNOFF: Your Honor, can you still hear me?
 3            THE COURT: Yeah. Just - you need to speak into the
 4   microphone so we can record what you're saying.
 5            MR. DUBNOFF: Yes. Yes, Your Honor.
 6            I wasn't able to see the witness's -
 7            THE COURT: Oh, I see. Sorry.
 8            MR. DUBNOFF: - face, so.
 9   Q    Mr. Kramer, could you please tell the Court and Defense
10   Counsel where you live and what positions you've held in
11   Millbourne Borough.
12   A    I live at (PII DEIDENTIFIED).
13   Q    No, I'm sorry. Not the street address.
14   A    Okay.
15   Q    The - the township.
16   A    I - I live in Millbourne Borough, Delaware County.
17        And I held Office in Millbourne Borough for 18 years.
18   Six years on Council, three terms as Mayor.
19   Q    And did you resign as Mayor, or did you step down
20   following the 2021 election?
21   A    I - I stepped down.
22   Q    All right. And -.
23   A    I did not run for that ele- - in that election. I
24   figured it was time for someone else to take -
25   Q    And -.
```

```
1    A    - responsibility.

2    Q    And was it in the 2021 election where Mayor Tayub

3    defeated Mr. Hasan - MD Nural Hasan, for Mayor of Millbourne?

4    A    That's correct.

5    Q    And has Mr. Tayub been Mayor of Millbourne since that

6    election?

7    A    That's correct.

8    Q    In 2025, have you attended meetings of the Millbourne

9    Borough Council?

10   A    Yes, about three or four of them.

11   Q    And during those - those meetings that you've attended,

12   have any of them been after Mr. Ali pleaded guilty to the

13   charges in this case?

14   A    They were all after he had pleaded guilty.

15   Q    Could you please tell His Honor what, if anything, you

16   said at those meetings?

17   A    Yes.

18        Your Honor, the reason I attended the meetings was

19   because I was assuming that since the Defendant said this

20   Defendant had pleaded guilty to 25 felony counts that he

21   would be resigning, along with the other Defendant, who had

22   also pleaded guilty. So, I attended the meeting with the

23   expectation that they would be and was interested in seeing

24   how they would fill their - their vacancies.

25        And what - what I found was I - I addressed the - the -
```

1  there's a public comment period before the meeting, and

2  there's one after the meeting as well, but I spoke during the

3  public comment before the meeting and asked - well, I - first

4  of all, I made sure that I had the right people, that they

5  were indeed the people who were pleading guilty to the felony

6  counts, and they affirmed that. And I asked them if they

7  intended to resign, and they both - well, I'll - I will speak

8  with just one. Mr. Ali smiled and shook his head, no.

9      And I said, or I asked them both are you aware that a

10 State law and the Borough Code states that people convicted

11 of a - people convicted of infamous crimes are not eligible

12 to hold public office. And they smiled and said nothing. And

13 I said, well, infamous crimes is defined - and I read them

14 the - the case law that said that felonies were defined as

15 infamo- - infamous crimes. And they just looked me and

16 smiled. And - and I said, well, knowing that, I mean, do you

17 intend to step down? And they again just shook their head,

18 no.

19     And then I asked them if they had any kind of remorse or

20 anything that they wanted to say to the residents, because

21 there were a lot residents there for that meeting - at least

22 three residents, let's see, Bill Mulgrew, Chris Cosfol. There

23 were one or two other residents there that asked them if they

24 would resign, and they responded in the same way.    And

25 there response was that - you know, if they had anything to

1    say to the residents of the Borough, they smiled and shook

2    their head, no.

3    Q    Mr. Kramer, since you identified other individuals, just

4    for the record, I'm going to ask you if you could try to

5    spell their names. If you could just provide their full

6    names.

7    A    Sure. One individual was Chris Caswell. Chris is C-O-S-

8    F-O-L. Another individual was Bill Mulgrew, M-U-L-G-R-E-W.

9         Another individual was - there's a couple, and I'm not

10   sure of their names. They live on (PII DEIDENTIFIED).

11   Actually, they live -.

12   Q    Without stating their street address, please.

13   A    I'm sorry.

14   Q    Just their na- - just - because -.

15   A    Ry- - Ryan - Ryan and - I don't know his last name.

16   Q    Okay.

17        And during - well, in 2025, have other members of the

18   Borough Council stepped down?

19   A    Yes. Two other members stepped down because they were

20   non-residents, had been non-residents for years.

21   Q    And you - you've mentioned two individuals, and I

22   understand you're focused on Mr. Ali today. Is the other

23   person his Co-Defendant, MD Nural Hasan?

24   A    Yes.

25   Q    And are - are you indicating through your testimony that

1  Mr. Hasan and Mr. Ali both remained on the Council?

2  A    That's correct.

3  Q    By remaining on the Council after they both pleaded

4  guilty, did they both have input into who would replace those

5  other two members of the Council who had left because they

6  were non-residents?

7  A    That's correct.

8  Q    Could you just explain briefly the mechanism, how they

9  had - still had the authority to pick successors?

10  A    Well, basically, when someone resigns from Borough

11  Council, it's the Council - Council appoints their successor.

12      So, one of their - one of their cohorts in the - in the

13  20- - 2021 election - I'm - I'm losing track of that - in the

14  - one of their cohorts in the twenty-twenty - '21 election,

15  Alauddin Patwary - I don't know if he was a co-conspirator or

16  a - just an uncharged co-conspirator, or what, but he

17  resigned because he didn't live in the Borough for the last

18  few years, and another individual who lived in Havertown - I

19  don't even know what his name was - he resigned. So, they had

20  those two seats to replace.

21  Q    And did Mr. Ali help choose a successor or successors

22  for those two people?

23  A    Oh, absolutely.

24  Q    And did he do this after he had already pleaded guilty

25  in this case?

```
1    A    That's correct.

2    Q    As far as you know - well, when's the last time you

3    attended a meeting of the Borough Council?

4    A    I didn't - we have two meetings a month, generally. They

5    have a regular - they have a workshop meeting, and then they

6    have another meeting after that, a regular business meeting,

7    but they conducted businesses (sic) - they conduct business

8    at both meetings. So, I'm not really sure what the

9    distinction is between them. There used to be a distinction

10   where they didn't conduct business in a workshop meeting, but

11   now they do.

12   Q    A-.

13   A    So, I - I attend last month's meeting.

14   Q    As far as you know, has Mr. Ali resigned from the

15   Borough Council?

16   A    Not that I'm aware, as of - as of last week, I was able

17   to speak with the Borough Manager, and he told me that he was

18   still signing checks for the Borough.

19   Q    Mr. Ali was?

20   A    Mr. Ali.

21   Q    Okay.

22            MR. DUBNOFF: I have no further questions.

23            THE COURT: Thank you.

24            MR. TARPEY: May I, Your Honor?

25            THE COURT: You may cross-examine. Please state your
```

```
 1    name for the record.
 2              MR. TARPEY: Timothy Tarpey, Your Honor, for Mr.
 3    Ali.
 4              THE COURT: Thank you.
 5                    TOM KRAMER, GOVERNMENT WITNESS
 6                         CROSS-EXAMINATION
 7    BY MR. TARPEY:
 8    Q    Sir, what political party are you?
 9    A    Democrat.
10    Q    What political party is he?
11    A    I believe he's a Democrat, a. Although he did run as a
12    Republican at one time. He tried to - he tried to become
13    Mayor as Republican. He switched parties.
14    Q    Okay.
15         Would - would it be fair to say that you are on
16    different sides of the fence politically?
17    A    I don't really know because I don't really know what his
18    politics are, other than enriching himself and looking out
19    for himself.
20    Q    Okay.
21         Enriching himself? How much does he make a month?
22    A    I don't have access to his finances.
23    Q    How much did you much a month for co- - how much does a
24    Councillor make a month?
25    A    When I was on Council, we made about $80 a month.
```

```
 1        The first thing that they did when they got on Council

 2   was give themselves a raise -

 3   Q    Okay.

 4        To -.

 5   A    - to - and they - and they were disappointed that they

 6   couldn't raise it more.

 7   Q    Well, how - first of all, how much did they raise it to?

 8   A    $100 a month.

 9   Q    $100 a month. So, he makes -

10   A    So, there's -.

11   Q    - a hundred -.

12   A    So, there's no money in that respect.

13        What there is money in is being able to control the -

14   the - the Code enforcement in the Borough.

15        And what they've done is they've - and this is an

16   interesting thing - what they've done is they've bought up

17   mo- - a lot of the Borough, and they've installed these

18   basement apartments that are against Code. So, what they've

19   done over all these years - because that's what I was

20   thinking, -

21   Q    Well, hold - hold on -

22   A    - why would these guys be -

23   Q    - one second.

24   A    - so interested in -

25   Q    You - you're - you're sitting here -
```

```
1    A    - in -.

2         THE COURT: All right. All right.

3    Q    - hold on.

4    A    Yeah.

5    Q    You're accusing my client of crimes that he's never been

6    charged with. Right?

7    A    Well, he - he didn't - he hasn't been charged with them

8    because no one's really interested in -

9    Q    Okay.

10   A    - charging them.

11   Q    He has not been charged with those crimes. Correct?

12   A    As far as I know, he hasn't.

13   Q    Okay.

14        And these are allegations being made by you. Correct?

15   A    They could be verified, -

16   Q    Okay.

17   A    - if you'd like.

18   Q    All right.

19        As far as him resigning -

20   A    Yes.

21   Q    - okay, it was you that went and - and told him, hey,

22   you should resign. Right?

23   A    That's correct. I -

24   Q    Okay.

25   A    - I told him - I - I figured I'd save him some agony
```

1  here because it wasn't going to look good for him in court if

2  he didn't resign.

3  Q    Oh, so you were doing this out of the goodness of your

4  heart and your (INDISCERNIBLE 10:11:35) to -.

5  A    Exactly.

6  Q    Okay.

7  A    Yes.

8  Q    Thank you very much.

9       And sir, when you went and talked to him about

10 resigning, he said he wasn't going to resign, -

11 A    Mm-hmm.

12 Q    - but he also told you that he's not running again.

13 Right?

14 A    No, he did not tell me that.

15 Q    Okay.

16      Are you aware that he's not running again?

17 A    No, I'm not aware of that.

18      I - I don't do anything with politics. I want nothing to

19 do with politics anymore. This - the whole thing has left

20 such a distaste in my mouth that I want nothing to do with

21 it. And I don't - I don't really care one way or another.

22      But I will tell you this, that - that I was told by

23 other Democrats in the Borough, Bangladeshi Democratics, that

24 he would be running for Mayor, and that was - that was two

25 years ago. So, I'm assuming -

```
1    Q    Sir, -

2    A    - he was planning on running for Mayor -

3    Q    - we're - we're -

4    A    - this time.

5    Q    - talking about after he was - after he pled guilty in

6    this case.

7    A    After he pleaded guilty?

8    Q    Yes.

9    A    Okay.

10   Q    And you're telling the Judge, hey, Judge, I have such a

11   distaste for politics, but you're going to meetings?

12   A    I went - yes. I went - I went to - yeah, I - I did go to

13   some Council meetings -

14   Q    Okay.

15   A    - because, basically, I've been one of the few people

16   who has been following this through for the last four years,

17   -

18   Q    Okay.

19   A    - and I'm not doing it for my health, believe me.

20   Q    Sure.

21   A    There's - there's - there is no benefit in this for me.

22        And personally, I don't think I will ever go through

23   this process again because it's not worth it.

24   Q    Mm-hmm.

25   A    But the reason I went through with it was because I had
```

1  Filipino neighbors who came with me in hand with a batch of

2  ballots that - that - that came - that came to one of their

3  rental properties. They live a few doors away from - from Mr.

4  - your client there. And said, what should we do with these

5  ballots? And I said, this is what - this is what Tayub was

6  telling me about, the fake - the fake ballots, these people

7  have never - never lived here, they've never - he doesn't

8  know who they are.

9      He testified, the o- - the owner of the property went to

10  the County Court, signed an affidavit that these people had

11  never lived there.

12      And so, I got involved because - because the Filipino

13  neighbor came to me and said this is what goes on in our

14  country in the Philippines, this kind of nonsense.

15  Q    Aha.

16  A    And my response was, well, it shouldn't go on here. And

17  since then, I've just been doggedly pursuing this.

18  Q    Okay.

19      So, you're - you're angry, obviously, that this was

20  happening.

21  A    I wouldn't say I'm angry. I'm just - you know, I mean, I

22  would be hard for someone not to feel resentful after, you

23  know, four years of -. But do I feel resentful now, no. I

24  feel sorry for him.

25  Q    Okay.

```
 1        And let me ask you this, at any point - you obviously
 2   talked to the Government to prepare to testify or anything
 3   like that. Did you ever say to them, hey, is him resigning
 4   part of his deal?
 5   A    No, I didn't.
 6   Q    Did you ever ask them, like, hey, maybe, you know, call
 7   his lawyer and - and see if he'll resign?
 8   A    No.
 9   Q    Are you - are you under any type of - do you have any
10   type of knowledge for -
11   A    Fir- - first - first of all -
12   Q    - of anyone -
13   A    Fir- -.
14   Q    - of anyone -
15   A    First of all -
16   Q    - apart from -.
17        No, wait. Answer - listen to my question.
18        Are you - do you have any knowledge of anybody, anyone,
19   coming at him from an official government capacity, and
20   saying, hey, you know what, resign? Anyone telling him to
21   resign?
22   A    Of - of - of the individuals here?
23   Q    Of - of anybody but you.
24   A    Of - of the cor- -.
25        Well, I know that - I - I believe our solicitor
```

```
 1    encouraged them to resign. But -

 2    Q    Is he here today -

 3    A    - but I -

 4    Q    - to testify?

 5    A    - but I wasn't - I wasn't in the - in the meetings to

 6    hear that.

 7         But I - I believe that he probably was encouraged to

 8    resign by other people.

 9    Q    Okay.

10    A    As - as - as for - as for the - the - the Detectives,

11    the - the Prosecutors, and things like that, no. I never - I

12    never went to -.

13         First of all, I - I really didn't have any way of even

14    finding out their phone numbers. And how would I -

15    A    Do you have -

16    Q    - how -

17    A    - the internet?

18    Q    - how - how would I contact -.

19         MR. TARPEY: Judge, that's all the questions. He

20    can't fight in front of - that's all the questions I have,

21    Judge.

22    A    How - how would I contact -

23         THE COURT: All right. Just -

24    A    - Mark -

25         THE COURT: - that's enough.
```

1    A    - Mark Dubnoff?

2            THE COURT: All right.

3    A    All right.

4            THE COURT: Mr. Dubnoff, anything further?

5            MR. DUBNOFF: No, Your Honor.

6            THE COURT: You may step down, Mr. Kramer. Thank you

7    for coming.

8            MR. KRAMER: Thank you, Your Honor.

9            THE COURT: Mr. Dubnoff, you may proceed.

10           MR. DUBNOFF: So, I'm not going to call Mayor Tayub

11   for testimony.

12           I will proffer to the Court that - that - that

13   Mayor Tayub has told us, just outside the courtroom before

14   coming in today, that last he checked he was told that Mr.

15   Ali is still on the Borough Council. That's our updated

16   information. I don't know if that's the case. Perhaps things

17   have changed in the last week, but that's the information we

18   received from Mayor Tayub this morning.

19           With regard to the sentencing, I don't believe

20   there's a dispute with regard to the guideline calculation.

21           As Your Honor knows, there's a three-step process

22   to go through when calculating a defendant's sentence.

23           The first step is to determine the guideline

24   procedure. I believe we're all in agreement as to the

25   appropriate offense level, the criminal history category, and

1    the sentencing range, which I believe is 15 to 21 months. I

2    don't believe there's an objection to that.

3            UNIDENTIFIED DEFENSE ATTORNEY: No objection, Your

4    Honor.

5            UNIDENTIFIED DEFENSE ATTORNEY: No.

6            THE COURT: Thank you.

7            MR. DUBNOFF: There is request by Defense for a

8    downward variance, essentially a non-custodial sentence. We

9    oppose that, Your Honor.

10           This is a very serious offense. Mr. Ali, with his

11   Co-Defendants, sought to undermine the American electoral

12   process. They sought to rig an election. Thankfully, they

13   failed. But after losing a fair election in the primary, Mr.

14   Hasan recruited two, at that point, other members of the

15   Borough Council to help him launch a write-in campaign,

16   solicit non-residents of Millbourne to register them within

17   Millbourne, cast ballots on their behalf for Mr. Hasan in an

18   attempt to steal an election. This is a very serious offense,

19   and it goes - it - it - it's understandable why Mr. Kramer

20   has, as he put it, so doggedly pursued this for four years

21   because it undermined the will of the people. It was an

22   attempt to undermine the - the legitimate votes of everybody

23   in Millbourne Borough, all the legal residents of Millbourne

24   Borough.

25           If one were to look at the 3553(a) factors here,

1    the nature of the offense, extremely serious. As Your Honor

2    noted at other sentencings in this case, this is one of the

3    most serious offenses we have that does not involve violence.

4    This is an offense that affects not just Millbourne Borough,

5    but Delaware County, the Commonwealth of Pennsylvania, and

6    the United States because it undermines people's faith in the

7    integrity of our election process.

8          There are - there are a number of factors that I

9    outlined in my Sentencing Memo that are exacerbating factors

10   here. One of which is that he's not just an ordinary citizen.

11   Mr. Ali is not just an ordinary citizen who tried to rig an

12   election. He was a member of the Borough Council. He was a

13   leader of the community.

14         Now, at just about every sentencing I've been to

15   over more than 17 years, we see defense - defendants pack a

16   courtroom with supporters to show that this is a man - the

17   defendant is a man of otherwise good character, a - a person

18   well respected in the community.

19         Well, look at this courtroom, packed with people

20   who look at Mr. Ali as a leader, and that's exactly - that's

21   exactly why he was able to commit this crime - these crimes,

22   25 convict- - 25 felonies of conviction, because he is viewed

23   as such a leader in the community, because he has such an

24   impact, because he is so well respected in the community,

25   that's what enabled him. He took advantage of that respect

1   that he has in the community. I suspect you may hear from

2   some of these people.

3        The more they speak for him, the more it - it's

4   testimony in support of how he was able to commit these

5   crimes with Mr. Hasan, how they went to somebody's house and

6   then convinced him to - to provide them with his personal

7   identifying information, his wife's personal identifying

8   information, his daughter's personal identifying information.

9   And after Detectives went to interview this individual, who's

10  identified as Person C in the Indictment - after Detectives

11  first went to interview him, Person C went upstairs and made

12  a call to Mr. Ali, and Mr. Ali told him to lie to the

13  investigators. He told him to lie. That's obstruction of

14  justice. That's why the enhancement applies in this

15  particular case.

16       He's known as Mithu in the community. He has a

17  leadership position with the - I forget the exact name of the

18  organization, the Bangladesh Taxi Association -

19       UNIDENTIFIED SPEAKER: Philadelphia.

20       MR. DUBNOFF: - of Philadelphia. It's precisely

21  because of the respect that he has in the community that he

22  was able to carry out these crimes.

23       The second exacerbating factor here is that this is

24  a newly minted United States citizen. He came to this country

25  approximately two decades ago, became a US citizen, took an

1    oath to defend the Constitution and the laws of this country,

2    and instead he undermined them. He undermined them. One of

3    the most important laws we have, the laws affecting free and

4    fair elections, and he undermined them.

5          So, the - the additional factor that I'd like Your

6    Honor to consider with regard to 3553(a) is we always talk

7    about the - the Sentencing Guidelines and the need to avoid

8    disparate sentences among similarly situated defendants.

9          So, it is important to consider the sentences that

10   have been handed out in this case already.  We have a year

11   and a day for Mr. Islam, who was much less involved than Mr.

12   Ali. We have three years for Mr. Hasan, who was the

13   ringleader and the main beneficiary of this scam.

14         And under the Guidelines, the range is 15 to 21

15   months. I'm authorized to seek a sentence at the top of the

16   guideline range. I'm not authorized to seek any higher. I am

17   therefore asking Your Honor to impose a sentence of 21 months

18   imprisonment on Mr. Ali.

19         And I'm happy to answer any questions, Your Honor.

20         THE COURT: Thank you.

21         Mr. Tarpey?

22         MR. TARPEY: Judge, Mr. Wertheimer.

23         THE COURT: Mr. Wertheimer, you may -.

24         MR. WERTHEIMER: Good morning, Your Honor.

25         THE COURT: Good morning.

1          MR. WERTHEIMER: I'm Spencer Wertheimer for Mr. Ali,

2     with my colleague, Mr. Tarpey.

3          The Government has correctly assessed the

4     Defendant's advisory sentencing range of 15 to 21 months.

5          I would respectfully suggest a downward departure

6     is called for in this case. A review of the post-Booker cases

7     would lead to this, in my opinion.    I'm sure Your Honor

8     knows these cases. I'm not going to dwell on them at great

9     length, but I'll just highlight two or three of them.

10          In Tomko, a defendant was convicted of tax evasion,

11     $250,000 tax evasion, with a guideline of 12 to 18 months,

12     and the Third Circuit held that the Court's sentence to

13     probation and home confinement and a fine was reasonable

14     because of the defendant's minimal criminal record.

15     Defendant, in this case, has no criminal record whatsoever.

16          In the Baker case, the Court held that prison time

17     was more significant for someone who is a first offender, and

18     a downward guideline sentence is justified in that case.

19     Again, Mr. Ali is a first offender.

20          In Autry (PHONETIC), the defendant was convicted of

21     possession of child pornography with a guideline sentence of

22     41 to 51 months. The Court found a variance to probation

23     because of the positive characteristics of the defendant,

24     such as, and I'll quote here, having no history of substance

25     abuse, no interpersonal instability, no sociopathic or

1    criminalistic attitude, motivation and intelligence, and the

2    support of his wife and child. All of which are present here.

3          In Pepper (PHONETIC), the Court indicated the

4    likelihood that the defendant will engage in future criminal

5    conduct is a central factor. And, obviously, the Defendant

6    will never engage in this criminal conduct again.

7          In the US versus Howe (PHONETIC), this is the last

8    case I'll mention, the Court sentenced to probation for many

9    reasons, even though the Government requested an 18 month

10   sentence, stating that Mr. Howe (PHONETIC) had no criminal

11   history, no drug or alcohol history, he was a well-regarded

12   member of his community. I would say that seeing all these

13   people here, many of whom took off from work to be here,

14   shows that he's a well-regarded member of his community.

15         I'd like to discuss briefly, since the Government

16   brought it up, the fact that Mr. Hasan (sic) is still serving

17   on Council. He determined not to run for reelection, did not

18   run in the primary, wished to serve out his term so he could

19   help his community to the very end.

20         He's a man who is an immigrant here. He doesn't

21   speak well. Sometimes I even have trouble understanding him,

22   and he has trouble understanding me sometimes.

23         THE COURT: When does the term expire?

24         MR. WERTHEIMER: I beg your pardon?

25         THE COURT: When does his term expire?

```
 1            MR. WERTHEIMER: When, what?

 2            THE COURT: Does his term expire?

 3            MR. WERTHEIMER: His term expires -

 4            MR. ALI: In De- - December.

 5            MR. WERTHEIMER: - December. And the p-.

 6            THE COURT: December of 2025?

 7            MR. WERTHEIMER: Yes. And the primary was in May, I

 8   believe.

 9            MR. ALI: And I did not run then.

10            MR. WERTHEIMER: And he did not run in the primary.

11            MR. ALI: No.

12            MR. WERTHEIMER: I'd like to talk about his

13   character and family circumstances for a moment.

14            A simple perusal of the letters that were submitted

15   see- -.

16            THE COURT: I've read them all, just for the record.

17            MR. WERTHEIMER: Yes, -

18            THE COURT: I've read them all.

19            MR. WERTHEIMER: - thank you, Your Honor. Thank you,

20   Your Honor.

21            And they describe him as a man with great sympathy,

22   compassion, a great worker, a person of great character.

23            The School Board Director - the School Board

24   Director of the Upper Darby School District, and I - I do

25   feel I need to quote this, has stated that, "His commitment
```

1    to his community, integrity, and strong moral character has

2    always been evident in his actions. He has demonstrated

3    honesty, compassion, and a genuine willingness to assist

4    others."

5         I need to also point out that the Defendant in this

6    case is the sole healthcare provider for his father-in-law

7    who lives with the Defendant. No one else is available -

8    available to provide this care. Incidentally, in Presentence

9    Report it states that he earns $40 an hour for this care. In

10   actuality, it's $14 an hour. I can understand the Presentence

11   Report making a mistake since it's hard sometimes to

12   understand the Defendant. But he makes $14 an hour for taking

13   care of his father-in-law.

14        He has two school aged children. The family would

15   be financially destitute without his support. And he has one

16   son who is a student at Saint Joe's University, he's a

17   freshman there, and without his support in terms of his -

18   paying his tuition, he might well be forced to drop out of

19   college.

20        He's certainly no risk to the community. He's a

21   loved and responsible member of the community.

22        And Counsel mentioned the Bangladesh Taxi

23   Association. The Bangladesh Taxi Association has a tradition

24   where when one of their members dies, every member has to

25   donate $100 - should donate $100. A collection is made and

1    given to the family of the deceased. Mr. Ali is the person

2    who is tasked with that responsibility, and over time has

3    given over $100,000 to members of those families,

4    particularly during the COVID crisis.

5             I also need to mention his poor health. He has

6    suffered a stroke in the past which resulted for a time of

7    temporary blindness and hospitalization. Doctor Abdul, who is

8    an MD, stated that he may suffer a stroke or heart attack if

9    separated from his family. Doctor Ahmed (PHONETIC), also an

10   MD, stated he is suffering from multiple medical illnesses

11   and taking medications. His condition can cause

12   cardiovascular morbidity and mortality, including stroke and

13   heart attack. Dr. Mooreville, an MD, stated he's a candidate

14   for necessary surgery. And Doctor Suman (PHONETIC), also an

15   MD, states that he needs -

16             THE COURT: What type of sur- -.

17             MR. WERTHEIMER: - to be under -

18             THE COURT: What type of surgery?

19             MR. WERTHEIMER: I beg your pardon?

20             THE COURT: What type of surgery are we talking

21   about?

22             MR. WERTHEIMER: Kidney or Peyronie's surgery.

23   Right?

24             MR. ALI: Right.

25             MR. WERTHEIMER: He has Peyronie's condition and

1    needs surgery.

2              MR. ALI: And (INDISCERNIBLE 10:29:04) stone.

3              MR. WERTHEIMER: And Doc- - and Dr. Symmon

4    (PHONETIC) indicates it's important he remains under constant

5    medical follow-up to ensure optimal outcomes.

6              Your Honor, I believe these are all factors to

7    consider in terms of sentencing. It's respectfully suggested

8    that this is a clear matter for a downward departure.

9              Considering the Defendant's character, his

10   community support, his family circumstances, and his health,

11   I would respectfully suggest that he be sentenced to home

12   confinement so that he may continue to take care of his

13   family, to take care as the healthcare provider for his

14   father-in-law, and support is family and children and keep

15   his son in college.

16             I agree that a fine and - and probation is

17   appropriate.

18             Thank you for your consideration, Your Honor.

19             THE COURT: Mr. Dubnoff, does the Government have

20   any response to these health conditions and so forth?

21             MR. DUBNOFF: No, Your Honor.

22             THE COURT: No comment at all?

23             MR. DUBNOFF: The - the health conditions are not

24   exact- - fully detailed in there, Your Honor.

25             I have a couple of letters from physicians which -

 1    I heard him mention the - the letter from Doctor Ahmed

 2    (PHONETIC), and there's a note here from Michael Mooreville.

 3    But I thought Mr. Wertheimer may have mentioned a third that

 4    perhaps -.

 5            MR. WERTHEIMER: I mentioned Doctor Abdul - Doctor

 6    Ahmed, Doctor -

 7            MR. DUBNOFF: Doctor -.

 8            MR. WERTHEIMER: - Mooreville, and Doctor Siman

 9    (PHONETIC).

10            MR. DUBNOFF: Doc- - Doctor Malik, is that the one?

11    Doctor Abdul Malik?

12            MR. WERTHEIMER: Malik Abdul.

13            MR. DUBNOFF: Malik Abdul. Okay. I have him as

14    Doctor Abdul Malik.

15            In any case, Your Honor, to the extent that he's

16    relying on health, this actually sounds more of a - a Motion

17    for a Downward Departure based on health, than - than a

18    downward variance.

19            It's certainly a - a factor to be considered here,

20    but there - there's nothing that indicates that he would not

21    be able to get the treatment he needs in a federal medical

22    facility such as Butner or FMC Devens. The federal prison

23    system does have many facilities that treat these sort- -

24    sorts of ailments.

25            I find nothing in here that would suggest that -

1   that - that would suggest that his conditions are such that

2   he could not receive the treatment he needs in prison.

3        There are numerous cases that - that we have where

4   we, of course, have defendants who are suffering from various

5   medical conditions, and often we hear that they can't get the

6   medical care they need, and often that proves to not be the

7   case. They can certainly have the - the care they - they need

8   in prison.

9        And while I'm sympathetic to the concerns expressed

10  that imprisoning Mr. Ali will have a detrimental impact on

11  his loved ones, that is unfortunately always the case when we

12  have a defendant who commits crimes. The vi- - there are

13  indirect victims of - of his crimes, and they're not

14  intended. He certainly did not intend to hurt his loved ones.

15       He intended to help steal the election away from

16  Mayor Tayub. He intended to help deprive the citizen of

17  Millbourne of their right to have their votes count just as

18  much as the supporters of Mr. Hasan. He intended to deprive

19  the voters in the Commonwealth of Pennsylvania of having free

20  and fair elections.

21       But he did cause the harm to his loved ones of not

22  having his care. To the extent that his father-in-law is

23  dependent on his care, he is an indirect victim of Mr. Ali's

24  crimes.  It is unfortunate that that's the case, but it does

25  not take away from the fact that he committed very serious

1    offenses, for which a term of imprisonment is appropriate

2    here.

3            So, while I am sympathetic to his indirect victims

4    in this case, that sympathy does not justify a downward

5    variance or departure to a sentence that Mr. Wertheimer is

6    requesting, which would be a non-custodial sentence of home

7    confinement or probation. We agree that a fine should be

8    imposed. But a sentence of imprisonment, we submit 21 months

9    would be most appropriate given all of the factors under

10   3553(a).

11           THE COURT: Thank you.

12           MR. DUBNOFF: Thank you.

13           THE COURT: Defense Counsel have anything further

14   before I hear from the Defendant?

15           MR. WERTHEIMER: Well, I think the Guidelines call

16   from 12 to 18 months. Am I wrong?

17           MR. DUBNOFF: It's 15 -

18           THE COURT: No, it's -

19           MR. DUBNOFF: - to 21

20           THE COURT: - 15 to 21.

21           MR. WERTHEIMER: Fifteen to 21. Sorry. I wrote that

22   down wrong then. I apologize. I apologize.

23           No, I think that's -.

24           One thing.

25           (DEFENSE COUNSEL CONFER)

1          MR. WERTHEIMER:    It is important to note that if

2  - it is true that he's serving on Council, for which he's

3  paid $100 a month.

4          I need to add that he ran in this election in

5  question. He was unopposed.

6          And also, if the Government wanted him to resign,

7  probably they should have made it part of his Plea Agreement,

8  and he certainly would have.

9          THE COURT: So, he did run for reelection?

10          MR. WERTHEIMER: He did not.

11          THE COURT: Oh, he did not. All right.

12          MR. WERTHEIMER: He did not, Your Honor.

13          THE COURT: All right.

14          MR. DUBNOFF: Just for clarification, Your Honor?

15          THE COURT: Yes, sure. Go ahead.

16          MR. DUBNOFF: I - I - I assume they're referring to

17  the 2021 election, which was the last one that - it's my

18  understanding that he ran in 2021. If so, there were multiple

19  candidates vying for multiple spots on the ballot. He was not

20  unopposed. He - he did win reelection there.

21          THE COURT: Right. Apparently, he won it. Now, it's

22  a four year term -

23          MR. DUBNOFF: It - it is, and there are staggered,

24  so -.

25          THE COURT: - for - for Boro- for members of Bor- -

```
 1    Borough Council, so that he would be up for reelection in

 2    2025.

 3              MR. DUBNOFF: That's correct.

 4              THE COURT: And we - the primary in Pennsylvania has

 5    already taken place.

 6              MR. DUBNOFF: It did.

 7              THE COURT: So, I'm advised he did not run for

 8    reelection in 2025. So, he's still serving his term to which

 9    he was elected in 2021.

10              MR. DUBNOFF: That's correct, Your Honor.

11              I don't believe it was unopposed. I - when I've

12    seen the election results, there were multiple candidates for

13    Borough Council that year.

14              THE COURT: And you're talking about 2021.

15              MR. DUBNOFF: In 2021.

16              THE COURT: All right.

17              MR. DUBNOFF: So, I - I - I don't think Mr.

18    Wertheimer is correct with that.

19              THE COURT: All right. Thank you.

20              Ms. Spicer, will you please swear in the Defendant.

21              (The Defendant is sworn)

22              THE COURT: Mr. Ali, this is your opportunity now to

23    address the Court to advise me of anything you think I should

24    know about you and your circumstances before I determine what

25    sentence to impose.
```

1          MR. ALI: Your Honor, I am extremely sorry for my

2    action, and I admit my guilt in this matter. There is no

3    excuse for my behavior. I have lived in the United States for

4    many year and I have never broken the law before. I promise I

5    will never do it again. I feel humble and humiliated before

6    my family and neighbors.

7          I hope Your Honor, will allow me not to be sent to

8    prison. I am the sole health provider for my elder, father-

9    in-law. I am also responsible for my son's college tuition

10   and providing for my wife, mother-in-law, and elder - and

11   father-in-law, and two sons who will be in a difficult

12   position if I am not at home to care and provide for them.

13   Again, I am sorry and hope you will let me be at home so that

14   I can take care of my family responsibilities.

15          (DEFENDANT CRYING

16          (BACKGROUND NOISE)

17          THE COURT: Anything further, or has he completed?

18          (DEFENSE COUNSEL CONFERS).

19          (DEFENDANT CRYING)

20          (BACKGROUND NOISE)

21          THE COURT: Mr. Ali, you have pleaded guilty before

22   this Court to one count of conspiracy.

23          You have pleaded guilty to false information in

24   registering persons to vote and aiding and abetting in Counts

25   2, 4, 5, 6, 7, 8, 11, 12, 14, 15, 16, and 17.

1          And you've pleaded guilty to fraudulent voter

2     registration and aiding and abetting in Counts 18, 20, 21,

3     22, 23, 24, 27, 28, 30, and 33.

4          I must first calculate your sentence under the

5     Advisory Sentencing Guidelines.

6          The base offense level in this case is 12. I find

7     that you were a manager or a supervisor of criminal activity

8     involving five or more participants, and therefore I must

9     increase the base offense level by three levels. I also find

10    that you obstructed justice, and I will add two additional

11    levels, for a total of 17. I find you have accepted

12    responsibility for your conduct, which permits me to depart

13    downward three levels, for a total offense level of 14.

14         You have no criminal history points for a criminal

15    history category of 1.

16         Under the Advisory Sentencing Guidelines, you could

17    be sentenced to between 15 and 21 month imprisonment. Before

18    determining what sentence to impose, I must take into account

19    the various factors under Title 18, United States Code,

20    Section 3553(a), and fashion a sentence which is sufficient

21    but not greater than necessary.

22         The salient factors in this case are the nature and

23    circumstances of the offenses; and the history and

24    characteristics of you, the Defendant; the seriousness of the

25    offenses; the need to promote respect for the law; the need

1    to provide just punishment for the offenses; the need to

2    afford adequate deterrents to criminal conduct; and the need

3    to protect the public from further crimes of you, the

4    Defendant.

5          First, Mr. Ali, we start with the serious of the

6    offenses. I don't think anyone can seriously doubt that what

7    you did was commit very grave offenses under the Criminal

8    Code of the United States. What you did was you committed an

9    assault on democracy, the foundation of our democratic

10   process, free, fair, and honest elections. And without that

11   foundation, our democratic process fails, and it inevitably

12   leads to dictatorship.

13         The Court must, of course, be concerned about

14   deterrence. While I have no doubt that you will not be back

15   before this Court again for similar crimes or any other

16   crime, I must be concerned about general deterrence to deter

17   other people who are thinking about engaging in a type of

18   conduct you engaged in. It's very important for this Court to

19   do whatever it can to minimize or prevent that type of

20   activity.

21         Needless to say, the Court must promote respect for

22   the law. This country depends on people respecting the law,

23   and there's no important laws to respect than our election

24   laws. As a result, the Court must consider and impose what it

25   deems to be a just punishment under the totality of the

1    circumstances.

2            I am fully aware of your history and your

3    characteristics. I have read all the letters which have been

4    sent on your behalf. I have listened to what you had to say,

5    and the elocution of what your Counsel have said. I am also

6    aware of your family situation, and also your health

7    situation.

8            But in considering all those factors, I - I cannot

9    forget the fact that th- - these offenses involved

10   approximately three dozen fraudulent votes, that you weren't

11   just a minor player in this conspiracy, you were a manager or

12   a supervisor in the conspiracy.

13           As Mr. Dubnoff stated, you were not simply a

14   citizen in the community, you held public office, you were a

15   member of the Borough Council. And it is troubling that after

16   you pleaded guilty that you continued to exercise

17   responsibilities in Council. And from what has been said here

18   today, you are still a member of the Borough Council.

19           You obstructed justice trying to persuade someone

20   to lie to the law enforcement officials.

21           And you also breached your oath when you became a

22   naturalized citizen. You swore to pro- - support and defend

23   the Constitution of the United States. What you have done

24   here is breach that oath.

25           I'm very sorry, as we've talked about here, about

1   the fact that there are a lot of indirect victims here are

2   your family members. And that's often the case where a person

3   is - appears for sentencing, and family members suffer as a

4   result.

5           Under the totality of the circumstances, Mr. Ali,

6   I'm going to commit you into the custody of the Attorney

7   General for a period of imprisonment of 21 months on all

8   counts. All sentences to run currently.

9           One year of supervised release will follow on each

10  count. Those terms of supervised release to run concurrently.

11          No fine will be imposed because of your inability

12  to pay.

13          I order you to pay immediately a Special Assessment

14  of $2,500.

15          To the extent you have not waived your right to

16  appeal, I advise you of your right to appeal your sentence to

17  the United States Court of Appeals for the Third Circuit. If

18  you cannot afford counsel, the Court will appoint counsel for

19  you free of charge. Any Notice of Appeal must be filed within

20  14 days after I sign the Judgement and Commitment Order. If

21  you wish a Notice of Appeal to be entered, you may indicate

22  that to the Deputy Clerk.

23          And I will also make a special request in the

24  Judgement and Commitment Order that you receive appropriate

25  medical treatment.

```
1              I order you to self-surrender on August 15th, 2025.

2              Anything further at this time from the Government?

3              MR. DUBNOFF: No, Your Honor.

4              THE COURT: Anything from the Defense Counsel?

5              MR. TARPEY: No, Your Honor.

6              MR. WERTHEIMER: Your Honor, I know that it's up to

7    the Bureau of Prisons as to where he will go, but I know they

8    take your recommendation very strongly.

9              It would be really wonderful if you could recommend

10   that he be sentenced to a prison close by where his -

11             UNIDENTIFIED SPEAKER: Yeah.

12             MR. WERTHEIMER: - family can come and visit.

13             THE COURT: I will recommend to the Bureau of

14   Prisons that he be served a sentence in an institution as

15   close to Philadelphia as possible.

16             MR. WERTHEIMER: Thank you very much, Your Honor.

17             THE COURT: Thank you very much.

18             MR. DUBNOFF: Thank you, Your Honor.

19             (Proceedings concluded at 10:46 a.m.)

20

21

22

23

24

25
```

**CERTIFICATION OF TRANSCRIPTION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


Signature of Approved Transcriber:

*Delanie Shepherd*

Typed or Printed Name:       Delanie Shepherd

Date:                        September 2, 2025